UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REAN SMITH,

Plaintiff,

-v-

CALYPSO CHARTER CRUISES INC. and FRANK
GIORDANO, JR.,

Defendants.

19 Civ. 7076 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case, now on summary judgment, involves claims under the Americans with
Disabilities Act (the "ADA"), 42 U.S.C. § 12181 *et seq.*, and related state and local laws by a
chef, plaintiff Rean Smith ("Smith"), who worked aboard cruise ships.  Smith brings claims
against Calypso Charter Cruises Inc. ("Calypso") and its owner and chief executive, Frank
Giordano, Jr. ("Giordano") (together, "defendants").  Between 2002 and 2013, and between 2015
against 2018, Calypso hired Smith's companies, Rean Smith Catering LLC ("RSC") and Salt and
Vinegar Catering LLC ("SVC"), to provide catering services on their cruises.  In June 2018,
however, Calypso ended its working relationship with Smith.  In this lawsuit, Smith contends
that his termination was a result of his diagnosis with sarcoidosis; defendants counter that they
ended the relationship after receiving customer complaints about the food and catering service.

Following targeted discovery on the nature of Smith's working relationship with
defendants, defendants now move for summary judgment against Smith's claims, which are
under the ADA, § 296 of the New York State Human Rights Law ("NYSHRL"), and § 8-107 of
the New York City Human Rights Law ("NYCHRL").  Defendants argue that the evidence does
not permit the conclusion that Smith was an employee, or, as to the NYCHRL, that he was an

independent contractor within the coverage of that statute, and that he therefore fell outside the protection of these laws.

For the reasons that follow, the Court grants defendants' motion.

## I.    Background

### A.    Factual Background[1]

#### 1.    Overview

Smith is a chef who owned and successively operated two businesses, RSC and then SVC. JSF ¶ 1. RSC was registered as an LLC in Connecticut on January 6, 2004, and dissolved on May 21, 2015. *Id.* ¶ 2. SVC was registered as an LLC in Connecticut on March 28, 2015; it remains an active business. *Id.* ¶ 5. Calypso is a New York corporation that operates charter cruises for hire, launching from Chelsea Piers in Manhattan. *Id.* ¶¶ 7–8. Giordano owns Calypso and is its chief executive officer. *Id.* ¶ 9.

---

[1] The Court draws its account of the facts from the parties' respective submissions on the motion for summary judgment, including: the parties' joint statement of undisputed facts, Dkt. 41 ("JSF"); defendants' Local Rule 56.1 statement, Dkt. 45 ("Calypso 56.1") and the attached exhibits; defendants' response to Plaintiff's Local Rule 56.1 counter-statement, Dkt. 47 ("Calypso Reply 56.1"); the declaration of Joseph E. Czerniawski, Esq., in support of Calypso's motion, Dkt. 43 ("Czerniawski Decl."), and the affidavits of Frank Giordano, Jr., Dkt. 25 ("Giordano Aff."), Dkt. 44 ("Dec. 2020 Giordano Aff.").

The Court does not, however, consider Smith's Local Rule 56.1 Statement ("Smith 56.1"), as it is deficient, for the reasons discussed herein.

Citations to a party's 56.1 statement incorporate the evidentiary materials cited therein. When facts stated in a party's 56.1 statement are supported by testimonial, video, or documentary evidence and not denied by the other party, or denied by a party without citation to conflicting admissible evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

It is undisputed that, between 2002 and 2018—save for a hiatus in and around 2014—Smith, through his companies, provided catering services to Calypso, in which Smith prepared food selected by the clients who had contracted with Calypso to go on its charter cruises.  The operative facts regarding the parties' dealings are overwhelmingly undisputed.  However, the parties—who appear not to have had a written agreement defining their relationship—centrally dispute the legal character of their relationship.  Smith implicitly pleads that he at all times was an employee of Calypso.[2]  Defendants, however, maintain that they contracted with Smith's two catering companies, RSC and SVC, under circumstances in which it was clear that they—and Smith—provided catering services as independent contractors.  *See generally id.* ¶ 13 (setting out parties' conflicting positions on the legal character of their relationship).

After the initial conference in this case, the Court authorized targeted discovery as to the nature of Smith's business relationship with defendants, and in particular, whether he was an employee of defendants, as is necessary for liability under the ADA and NYSHRL and is among the bases for liability under the NYCHRL, and if not, whether Smith's work as an independent contractor was of a nature that can support liability under the NYCHRL.  *See* Dkt. 34.  The parties undertook such discovery, which by agreement was limited to interrogatory responses and document discovery.  The facts recited below accordingly are those, bearing on the issue, developed in such discovery.

---

[2] To this end, Smith's Amended Complaint brings claims against Calypso and Giordano under statutes applicable only to employees, *see* Dkt. 35 ("AC") ¶ 1; and alleges that before bringing suit, Smith brought a charge before, and received a right to sue letter from, the Equal Employment Opportunity Commission, *id.* ¶¶ 6–7, and that in May 2018, Giordano, "terminated Plaintiff's employment with Defendants," *id.* ¶ 26.

### 2.      2002-2013: The Business Relationship Between RSC and Calypso

Between 2002 and 2013, Calypso engaged with RSC to provide food catering services to Calypso's clients on its cruises.  JSF ¶¶ 13, 23.  After some cruises, Calypso received invoices on RSC's letterhead for its catering services.  *Id.* ¶ 17.  Calypso paid RSC for these services with checks issued from its bank accounts at JPMorgan Chase Bank and Bethpage Federal Credit Union that were signed by Giordano and directed to RSC or to Smith individually; in the vast majority of cases, the checks were issued to RSC directly.  *Id.* ¶ 18; Calypso Reply 56.1 ¶ 2(a). None of the checks that Calypso issued to RSC or Smith individually withheld money for tax deductions.  JSF ¶ 19.  Nor did Calypso ever provide RSC, Smith, or RSC employees with 1099 or W-2 forms.  *Id.* ¶ 22.  RSC was a separate legal entity from Calypso and maintained separate financials.  Calypso Rule 56.1 ¶ 24.

During this period, Calypso, when necessary, hired other catering services and vendors, such as when Smith had scheduling conflicts or when clients requested Kosher food.  *Id.* ¶ 21. Likewise, during this period, RSC provided catering services to other clients besides Calypso. *Id.* ¶ 22.

In 2013, Calypso and RSC ended their relationship.  JSF ¶ 23; Calypso Rule 56.1 ¶ 25– 26.

### 3.      2015-2018: The Business Relationship Between SVC and Calypso

In or around September 2015, Calypso resumed its business relationship with Smith, after it received an email announcing the launch of SVC and advertising that SVC was "[b]ooking now for fall/winter and holiday events."  Calypso Rule 56.1 ¶ 27; *id.*, Ex. Q.  Calypso's course of dealing with SVC was similar to that with RSC.  Calypso paid SVC for food services with checks issued from its bank accounts at Capital One Bank.  JSF ¶ 27.  These checks were signed by Giordano and addressed to SVC or to Smith individually.  *Id.*  An April 1, 2016 email from

Smith's email address to Giordano requests, "[p]lease pay Salt and Vinegar Catering for this event and all future events."  Calypso 56.1, Ex. J.  As with RSC, the checks issued to SVC and Smith were not subject to withholdings or deductions.  JSF ¶ 28.

### 4.   Smith's Interactions with Calypso's Passenger-Clients

During all periods, once a passenger-client of Calypso's had booked a cruise and opted for catering services, Calypso would provide sample menus made by Smith to the client.  *Id.*; Calypso Rule 56.1 ¶ 16.  The client would then select from different "packages" of food.  *Id.* Calypso then communicated to Smith details about the cruise, including the client's menu selections and when to arrive.  JSF ¶¶ 13, 15.  The communications between Calypso and Smith generally occurred via text or telephone, but sometimes over email.  Calypso 56.1 ¶ 16.  Calypso sent clients invoices for each cruise, which itemized the price, and included the length of the cruise, the Calypso crew, and the menu selected.  JSF ¶ 14.

The Calypso yacht had a small kitchen containing a small stove, microwave, some pots and pans, knives, and some spices.  *Id.* ¶ 16.  The kitchen was small enough as to lead Calypso to expect that food would be prepared earlier at a separate location and heated up during the cruise. Calypso 56.1 ¶ 13.  Calypso did not have in-house food or beverage service, and did not ever apply to be a food service establishment.  *Id.*  Calypso did not hire catering services, like RSC and SVC, for all cruises, but only when customers requested catering.  *Id.*

On one occasion, SVC sent another chef on a Calypso cruise.  Giordano was assured that, "[Smith] will be discussing each dish directly with the chef."  Calypso 56.1, Ex. J.

### 5.   Smith's Termination

In June 2018, Calypso formally ended its relationship with Smith.  JSF ¶ 29.  Smith alleges that Calypso terminated his companies based on his diagnosis with sarcoidosis in his liver, lymph nodes, and lungs; Smith alleges that he was diagnosed in April 2014 and notified

5

Giordano that month of the diagnosis, AC ¶¶ 19, 22, but after Smith's disability became visibly noticeable in 2017, Giordano began to look to hire another chef, *id.* ¶¶ 24–25, ultimately terminating Smith in May 2018, *id.* ¶ 26. Defendants counter that they ended the relationship with SVC (and thus Smith) after receiving complaints relating to the late arrival of SVC staff, insufficient quantity of food, and poor food quality. Calypso Rule 56.1 ¶ 30.

**B.     Procedural History**

On July 29, 2019, Smith commenced this action by filing a complaint against Giordano and Calypso. Dkt. 1 ("Compl."). On December 26, 2019, defendants filed an answer. Dkt. 12. On December 27, 2019, the case was referred for mediation, Dkt. 14, which proved unsuccessful.

On May 8, 2020, defendants moved for judgment on the pleadings. Dkts. 24, 26. On June 12, 2020, Smith opposed that motion. Dkt. 29. A week later, on June 19, 2020, defendants submitted a reply. Dkt. 30.

At the initial pretrial conference on July 1, 2020, the Court denied the judgment on the pleadings and granted Smith leave to amend his complaint for the purpose of adding a basis for diversity jurisdiction. With the parties' agreement that such was the most efficient course of case management, the Court authorized targeted discovery on the nature of the relationship between Smith and defendants, including as to defendants' claim that Smith had not been an employee of theirs, in anticipation of summary judgment motion(s) on that issue. Dkt. 34. In the interest of economy, the parties agreed not to take depositions on these issues, and to limit discovery on it to interrogatories and document production. Dkt. 37.

On July 8, 2020, Smith filed the Amended Complaint ("AC"), Dkt. 35, the operative pleading in this case. Its claims, under the ADA, NYSHRL, and NYCHRL, are predominantly for discrimination and retaliation. Defendants answered on July 13, 2020. Dkt. 36.

On November 18, 2020, following the close of targeted discovery, the parties filed a joint statement of undisputed facts. *See* JSF.  On December 2, 2020, defendants filed a motion for summary judgment, Dkts. 42, 48; a memorandum of law in support, Dkts. 42, 49; a Local Rule 56.1 Statement, Dkt. 45; an affidavit from Giordano, Dkt. 44; the declaration of Joseph E. Czerniawski, Dkt. 43; and accompanying exhibits, Dkt. 45.

On December 16, 2020, Smith submitted to defendants but did not then docket[3] his opposition to summary judgment, his unverified interrogatory responses; and his Local Rule 56.1 Statement ("Smith 56.1").

On December 23, 2020, defendants filed a reply and a response to Smith's 56.1. Dkt. 46 ("Reply").  The reply noted that Smith's Rule 56.1 Statement had not been docketed and argued that it relied on improperly verified interrogatory responses. *Id.*

On August 17, 2021, the Court directed Smith to file a verified copy of his interrogatory responses by August 20, 2021, for them to be considered by the Court.  Dkt. 51.  On August 21, 2021, a day late, Smith filed his 56.1 Statement and a still improperly verified version of his interrogatory responses.  Dkt. 52.

## II.    Applicable Legal Standards

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

---

[3]  Smith first docketed his opposition and unverified interrogatory responses on January 28, 2021.  Dkt. 50.

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## III.   Discussion

Defendants move for summary judgment against all of Smith's claims. They argue that the evidence adduced in targeted discovery is insufficient to support a finding that Smith was an employee. This, they argue, defeats Smith's claims under the ADA and NYSHRL, because, they note, during the periods Smith worked for defendants, these statutes protected only employees, not independent contractors. As to the NYCHRL, defendants argue that Smith was unprotected by it, either, although defendants errantly claim that the NYCHRL—which in 2019 was amended to broadly cover independent contractors—did not cover independent contractors at all during the period of time Smith was engaged with Calypso, whereas in fact it applied to a subset of independent contractors: "natural persons employed as independent contractors to carry out work

8

in furtherance of an employer's business enterprise who are not themselves employers." N.Y. Exec. Law § 8-102(5). Smith disputes these conclusions.

The Court's analysis is in three parts. The Court first explains why Smith's factual submissions (his Rule 56.1 counterstatement and interrogatory responses) are deficient and must be disregarded. The Court then sets out the legal standards governing whether a person was an employee as opposed to an independent contractor, and applies these standards, finding that the evidence cannot support the conclusion that Smith was an employee of defendants. The Court finally addresses whether the evidence adduced can support that Smith was the type of independent contractor then-covered by the NYCHRL, and finds that it does not.

### A.    Smith's Rule 56.1 Statement

The parties here set out, in their joint statement of stipulated facts, the facts by far the most central to the issues at hand. Dkt. 41. Defendants also submitted a Local 56.1 Statement, setting out additional facts supported by admissible evidence and, assertedly, not contravened by other admissible evidence, *see* Dkt. 45. Smith, in turn, submitted a Local 56.1 counterstatement, purporting to contravene, via admissible evidence, factual propositions within defendants' 56.1 statement, *see* Dkt. 52. Defendants argue, at the threshold, that Smith's counterstatement must be disregarded, as deficient. Defendants are correct.

Local Civil Rule 56.1(d) requires that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be *admissible*, set forth as required by Fed. R. Civ. P. 56(c)." (emphasis added). Smith's 56.1 counterstatement, however,

does not include any citations to admissible evidence. It relies instead on Smith's interrogatory responses, which, defendants rightly note, were improperly verified.[4]

Here, despite an opportunity given him by the Court to bring the verification of his interrogatory responses into compliance, Smith has failed to do so. On December 23, 2020, the defense's reply put Smith on notice of the deficiency of his verification, citing to the Second Circuit decision so holding. Reply at 3–4 (citing *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013)). At that time, Smith's counterstatement, citing to the unverified interrogatories, had not been docketed; the defense's brief addressed the electronic copy it had received. On January 28, 2021, Smith's counterstatement was docketed, along with an unverified copy of the interrogatory responses. Dkt. 50. On August 17, 2021, the Court directed Smith to file a properly verified version of his interrogatory responses by the end of day on August 20, 2021. Dkt. 51.

Smith's amended verification of his interrogatory responses, filed on August 21, 2021, certifies the following: "I hereby certify that the foregoing Responses are true. I further certify that if any of the foregoing Responses are willfully false, I am subject to punishment." Dkt. 52, Ex. A. The Second Circuit, however, in *World Trade*, considered exactly the same formulation used in a set of interrogatory responses, and found it insufficient to meet the verification requirement. 722 F.3d at 488. The Circuit noted that 28 U.S.C. § 1746, which applies to

---

[4] Defendants independently seek to preclude consideration of Smith's interrogatory responses and Rule 56.1 counterstatement, on the grounds that Smith missed the deadlines the Court had set for filing these. Defendants are correct that Smith missed these filing deadlines—by over a month for the opposition, and by over eight months for Smith's counterstatement—although defendants acknowledge that they informally received these submissions. *See* Reply at 3. In light of Smith's far more fundamental lapse, in failing to file a 56.1 counterstatement supported by citations to verified and hence admissible interrogatory responses, the Court does not rely on the untimeliness of Smith's filings as a basis to disregard these submissions.

interrogatory responses, provides that an unsworn matter may be treated as sworn only if it is
"prove[n] by the unsworn declaration, certificate, verification, or statement, in writing of such
person which is subscribed by him, *as true under penalty of perjury*, and dated, in substantially
the . . . form of the model declaration provided." *Id.* (emphasis added).   The Circuit held that
utilizing the phrase "subject to punishment" in lieu of "under penalty of perjury" was a
substantial departure from the declaration required by § 1746, and failed to comply with the
statute.   *Id.*   The Circuit accordingly found that it was proper for the district court to have
rejected interrogatory answers that omitted the "under penalty of perjury language." *Id.*

     Smith's mode of verification here is, verbatim, the very certification the Second Circuit
unambiguously rejected as inadequate in *World Trade*.   The Court accordingly sets aside Smith's
inadequate verified interrogatories.   *See, e.g.*, *Shanchun Yu v. Diguojiaoyu, Inc.*, No. 18 Civ.
7303 (JMF), 2019 WL 6174204, at *4 (S.D.N.Y. Nov. 20, 2019) (finding interrogatory responses
"deficient" and therefore inadmissible where unsigned); *Melton v. Poughkeepsie City Sch. Dist.*,
No. 16 Civ. 9701 (VB), 2019 WL 4640234, at *1 (S.D.N.Y. Sept. 24, 2019), *appeal
dismissed*, No. 19-3559, 2019 WL 7756464 (2d Cir. Nov. 22, 2019) (finding written statement
deficient and therefore inadmissible where third party certified only: "I attest that the foregoing
statement is true and correct."); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 9194 (CM), 2010
WL 11043081, at *4 (S.D.N.Y. Feb. 25, 2010) (excluding unverified interrogatory responses).

     And because the Court expressly put Smith on notice of the legal requirements for
verification and yet Smith still declined to properly verify these responses, the Court declines to
give Smith a third opportunity to submit compliant responses, before resolving defendants'
pending summary judgment motion.   *See, e.g.*, *Shanchun Yu*, 2019 WL 6174204, at *4
(excluding interrogatory responses when they were submitted without proper verification after

Court issued an order mandating a response to overdue discovery requests); *Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07 Civ. 8828 (ER), 2013 WL 3929630, at *1 n.2 (S.D.N.Y. July 30, 2013) (disregarding portions of Rule 56.1 statement where denial failed to cite to admissible evidence, and where party had not been given an opportunity to cure this problem); *Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding portions of Rule 56.1 statement that relied on unsworn statements by coworkers, also without an opportunity to fix).

With Smith's interrogatory responses disregarded, Smith's 56.1 counterstatement must also be disregarded in its entirety, because no aspect of the counterstatement recites supporting evidence—let alone admissible evidence—other than the deficient interrogatory responses. *See, e.g., Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73–74 (2d Cir. 2001) ("[D]istrict courts in the Southern and Eastern Districts of New York have interpreted current Local Rule 56.1 to provide that where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.") (quotation omitted)); *Cruz v. Wyckoff Heights Med. Ctr.*, No. 13 Civ. 8355 (ER), 2016 WL 4533568, at *2 (S.D.N.Y. July 19, 2016); *APS Tech., Inc. v. Brant Oilfield Mgmt. & Sales, Inc.*, No. 13 Civ. 6500 (LTS) (KNF), 2015 WL 5707161, at *4 (S.D.N.Y. Sept. 29, 2015); *Grant v. Citibank (S. Dakota), N.A.*, No. 10 Civ. 2955 (KNF), 2010 WL 5187754, at *4 (S.D.N.Y. Dec. 6, 2010); *United States v. Moskowitz, Passman & Edelman*, No. 00 Civ. 3832 (RO), 2007 WL 2962556, at *2 (S.D.N.Y. Oct. 10, 2007), *aff'd*, 603 F.3d 162 (2d Cir. 2010).

**B.     Was Smith an Employee of Defendants?**

**1.     Applicable Legal Standards**

The ADA, the NYSHRL, and the NYCHRL all prohibit discrimination on the basis of disability, with the NYCHRL's protections being the most expansive. *See Mihalik v. Credit*

*Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (explaining that NYCHRL

coverage is "broader" than federal and state discrimination law).  However, through Smith's

termination in June 2018, the ADA and NYSHRL protected only employees.  *See Attis v. Solow*

*Realty Dev. Co.*, 522 F. Supp. 2d 623, 627 (S.D.N.Y. 2007) ("[P]laintiff is not covered by

the ADA or the NYSHRL because she was 'an independent contractor,' and only employees, not

independent contractors, are covered by those statutes."); *Stack v. Karr-Barth Assocs., Inc.*, No.

18 Civ.10371 (VEC), 2021 WL 1063389, at *2 (S.D.N.Y. Mar. 18, 2021) (ADA protects only

employees); *Rohn Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 466 (S.D.N.Y. Jan. 11,

2010) (NYSHRL protects only employees).[5]

The NYCHRL, on the other hand, during the period of Smith's work explicitly covered

independent contractors as well.  It did so where such contractors are "*natural persons* employed

as independent contractors to carry out work in furtherance of an employer's business enterprise

who are not themselves employers." N.Y. Exec. Law § 8-102(5) (emphasis added).  *See also*

*Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 680 (S.D.N.Y. Dec. 28, 2009); *Williams v.*

*Victoria's Secret*, No. 15 Civ.4715 (PGG) (JLC), 2017 WL 384787, at *4 (S.D.N.Y. Jan. 27,

2017), *report and recommendation adopted*, No. 15 Civ. 4715 (PGG) (JLC), 2017 WL 1162908

(S.D.N.Y. Mar. 28, 2017).[6]

The ADA, NYSHRL, and NYCHRL do not themselves define the term "employee."  To

determine whether an individual is an employee as opposed to an independent contractor under

---

[5] In 2019, the NYSHRL was amended to extend coverage to non-employees.  *See* N.Y. Exec. Law § 296-d (amended L. 2019, c. 160, § 4, eff. Oct. 11, 2019).

[6] Effective January 2020, the NYCHRL was amended to cover "interns, freelancers, and independent contractors," with the latter category no longer subject to the limitation that the worker be a "natural persons." NYCHRL § 8-107(23).

these statutes, courts have long used the common law agency test set out by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989). *See, e.g.*, *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113–14 (2d Cir. 2000) (applying *Reid* to NYSHRL claim); *Attis v. Solow Realty Dev. Co.*, 522 F. Supp. 2d 623, 627 (S.D.N.Y. 2007) (applying *Reid* to ADA claim); *Foresta v. Centerlight Cap. Mgmt.*, 379 F. App'x 44, 45–46 (2d Cir. 2010) (same); *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 321 (S.D.N.Y. 2020) (applying *Reid* to NYSHRL and NYCHRL claims). *Reid* set out a non-exclusive list of 13 factors relevant to this inquiry. These are: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party. 490 U.S. at 751–52.

In weighing the above factors, a court must disregard factors that are (1) irrelevant, or (2) of indeterminate weight. *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000) (citing *Aymes v. Bonelli*, 980 F.2d 857, 861, 863 (2d Cir.1992)). No single factor is dispositive, but the "greatest emphasis" must be placed on the first factor—the manner and means by which the worker completes his assigned tasks. *Id.*

2.     **Application**

a.  **The Hiring Party's Right to Control the Manner and Means by Which the Work Was Accomplished**

The first and most important factor—Calypso's right to control Smith's work as a chef—favors defendants.  That is because defendants adduce numerous items of admissible evidence that demonstrate that Calypso exercised relatively little control over the details of Smith's catering services, save that—as with presumably any outside caterer—these services were to be provided on the dates and times requested by the client (here, Calypso's cruise clients).

At the outset, during the course of his relationship with Calypso, Smith owned and operated his own catering businesses—sequentially, RSC and SVC—and was engaged with Calypso through those LLCs. JSF ¶¶ 1, 17, 18, 27; Calypso Rule 56.1 ¶¶ 19, 29.  That supports that, in his capacity as a chef, Smith was not employed by Calypso, but worked for his own LLCs, so as effectively to be self-employed.  *See* Calypso Reply 56.1 ¶¶ 1(a); 2(a).  *See, e.g.*, *Wilde v. Cty. of Kandiyohi*, 15 F.3d 103, 106 (8th Cir. 1994) (finding worker an independent contractor because he was a "self-employed business owner"); *Farlow v. Wachovia Bank of N. Carolina, N.A.*, 259 F.3d 309, 315 (4th Cir. 2001) (finding independent contractor status where attorney admitted self-employment status on tax returns); *Weary v. Cochran*, 377 F.3d 522, 528 (6th Cir. 2004) (finding independent contractor status where worker admitted that he was self-employed on loan documents).

Consistent with that, the relationship was structured such that Smith, relative to Calypso, remained in control of the specific catering services that his LLCs provided to Calypso's clients. The menus used for each cruise were selected by Calypso's clients, not by Calypso.  JSF ¶ 13; Calypso 56.1, Ex. I.  In this process, Calypso's Giordano was a middleman, conveying the clients' menu selections to the caterer, RSC or SVC.  And, importantly, the menus from which

the client selected had been created by RSC or SVC.  The sample menus in the record, which

cover the years 2003 to 2008, when Smith worked at RSC, were on RSC's letterhead and had

been created by RSC.  JSF ¶ 13; Calypso 56.1, Ex. I.  Later, after Calypso began to work with

SVC, although the record does not contain sample SVC menus, Giordano attested without

refutation that, similar to RSC, "[SVC] would send sample menus with prices at the beginning of

each season, which would be offered to Calypso customers when [SVC] were chosen." Dkt. 25,

("Giordano Aff."), ¶ 15.

On the record before the Court, the manner of creating the menu items, too, and even the

identity of the chef, was left with Smith's LLCs.  In a March 2016 email exchange, Smith stated

that although a different SVC chef would be providing the catering services, he, Smith, "will be

discussing each dish directly with the chef."  Calypso 56.1, Ex. F.  In the same email exchange,

Giordano stated, "Let me know who is doing it so I know who I am meeting"; Smith responded

that a John Walsh would be cooking on behalf of SVC.  *Id.*  There is no indication in this

exchange—or in other admissible evidence—that Smith required approval from Giordano to

send another chef.  Smith has not adduced any admissible evidence that the defendants directed

that particular dishes be prepared in a particular fashion, or be prepared at a particular time or in

a particular place.[7]

### b.  The Skill Required

"A skilled worker is more likely to be an independent contractor." *Stack*, 2021 WL

1063389, at *4.  A chef is a skilled occupation, typically requiring formal training.  Indeed,

RSC's website touts Smith's "extensive" credentials, which include graduating his culinary arts

---

[7] In his unverified interrogatory responses, Smith asserted that Giordano would "regularly
request[] that [Smith] prepare particular dishes . . . [and specify] where, when, and what food to
prepare, and create[ed] and chang[ed] the menus."  Smith 56.1, Ex. A at 8.

program at the top of his class, and specializing in "classic French technique."  Calypso 56.1, Ex.

B.  Accordingly, this factor, too, supports a finding that Smith is an independent contractor.

### c.  The Source of the Instrumentalities and Tools

This factor is—at best for Smith—of indeterminate weight.  Defendants state that they

"do not possess information or knowledge as to who purchased food and equipment for RSC and

SVC."  Calypso Reply 56.1 ¶ 12(a).  And because Smith's interrogatory responses have been

disregarded, the record is silent as to who was responsible for procuring the ingredients and

equipment.

There are, however, implications that RSC and SVC may have had this responsibility, as

would be unsurprising for a caterer.  For one, defendants' lack of information as to the

procurement of food would appear to exclude Calypso, as opposed to RSC and SVC and their

personnel including Smith, as the persons responsible for procuring ingredients.  The small

kitchens aboard Calypso's yacht, and the fact that food was prepared elsewhere and reheated

aboard the yacht, points in the same direction.  Finally, during targeted discovery, Smith declined

to produce his and his companies' tax returns, *see* Dkt. 39, which potentially could have shown

that food and equipment purchased for catering jobs had been deducted as business expenses.

However, because the Calypso defendants did not move to compel such returns, the Court will

not draw such an inference, and—in an excess of caution—will treat this factor as indeterminate.

### d.  The Location of the Work

Smith's control of where he cooked supports that he was an independent contractor.  In

*Reid*, the Supreme Court found this factor to favor independent contractor status where the

sculptor worked from his own studio, and hence with limited supervision.  490 U.S. at 752.

Similarly, here, the parties have stipulated that the Calypso yacht contained only a "small

kitchen," which included "a small stove, microwave, some pots and pans, knives, and some

spices." JSF ¶ 16. And Giordano attested without refutation that "[a]lthough the ships have kitchens to facilitate catering service, the kitchens are only for re-heating and some preparation. This means the caterers prepared a lot of the food beforehand." Giordano Aff. ¶ 4. He also attested that "it was expected that the vendor would prepare the food at their own kitchen." Calypso 56.1 ¶ 13.

This record is sufficient to show that cooking by caterers RSC and SVC was not required to be done onboard, and likely could not have been fully done on board. In all events, Smith was free to prepare the meals off-site, and according to Giordano, Smith did so. This in turn would have inhibited, if not made impossible, defendants' visual supervision of this central aspect of Smith's work. This factor, too, supports that Smith was an independent contractor.

### e.   The Duration of the Relationship Between the Parties

The parties agree that they worked together from 2002 to 2013, and then again from 2015 to 2018. JSF ¶¶ 13, 20, 21, 25, 29. Although business relationships among an entity and an independent contractor can be long-standing, under the case law, the impressive length of the parties' working relationship—some 14 years—supports a finding that Smith was an employee. *See, e.g.*, *Cosgriff v. Valdese Weavers LLC*, No. 09 Civ. 5234 (KMW) (MHD), 2012 WL 1071497, at *8 (S.D.N.Y. Mar. 30, 2012); *Stack*, 2021 WL 1063389, at *10..

### f.   Whether the Hiring Party Had the Right to Assign Additional Projects to the Hired Party

This factor is either of indeterminate weight, or at best lightly favors defendants. The parties have stipulated that "between 2002 and 2013, RSC provided catering services to clients other than Calypso," JSF ¶ 21. However, they have not made a similar stipulation with regard to SVC. And as to RSC, the record is sparse as to the circumstances under which RSC took on other catering customers, including whether Calypso had the right to bar RSC from working for

other clients on days when RSC was servicing Calypso.  Other than the fact that RSC retained

the right on some circumstances to serve other clients, the limited evidence in the record on this

point is too scant to assign more than minimal weight to this factor.

### g.  The Extent of the Hired Party's Discretion Over When and How Long to Work

This factor is of indeterminate weight. The parties agree that "Calypso would provide

certain information before a cruise, including when to arrive . . . and other cruise details." *Id.* ¶

15.  Calypso also adduced evidence of a "shift schedule," when the crew, including "Chef" were

expected to be onboard.  Calypso 56.1, Ex. F. at 10–11.  Given the nature of a cruise, personnel

from RSC or SVC were required to remain onboard and provide catering services for the

duration of the cruises on which their services were needed.  Otherwise, however, the record is

silent on this point, and Giordano attests without refutation that he understood the bulk of the

catering work was performed ahead of the cruise, *id.* ¶ 13, with Smith presumably responsible

for the timing and duration of his and his companies' pre-cruise preparatory efforts.

### h.  The Method of Payment

Independent contractors are commonly paid upon completion of a specific job, with the

pay keyed to the scale and nature of work as opposed to on a salaried or fixed basis.  *Reid*, 490

U.S. at 753.  Such was the case here.  Both RSC and SVC were demonstrably paid by check for

services rendered for each cruise.  *See* Giordano Aff. ¶ 14; Calypso 56.1, Ex. M (including more

than 100 checks made out to the catering companies, in a range of sums ranging from $400 to

$8,993).  This factor strongly supports Smith's independent contractor status.

### i.  The Hired Party's Role in Hiring and Paying Assistants

Smith retained the freedom to send other chefs to work on Calypso cruises.  *See* Calypso

56.1, Ex. J.  In an April 1, 2016 email, "Amy" from SVC informs Giordano that she would "let

John [the SVC chef] know to expect his payment from us." *Id.* Furthermore, defendants

regularly communicated with RSC and SVC representatives other than Smith. *See id.* This

factor, too, supports that Smith was hired as an independent contractor.

### j.   Whether the Work Was Part of the Regular Business of the Hiring Party and Whether the Hiring Party Was in Business

Calypso offered catering services as part of its cruises and operated regularly as a

business offering chartered cruises for hire. Giordano Aff. ¶ 3; JSF ¶¶ 7–8. These two factors

support that Smith was an employee.

### k.   The Provision of Employee Benefits and the Tax Treatment of the Hired Party

Smith and his LLCs filed separate taxes from Calypso; never received a W-2 or 1099

from Calypso; and were paid by checks issued by Calypso that were not subject to withholdings

or deduction of any kind (*e.g.*, for income taxes, Social Security, Medicare). JSF ¶¶ 22, 28. In

contrast, Calypso had five employees on its payroll, never including Smith, and their paychecks

were reduced to reflect deductions for, *inter alia*, Social Security and Medicare. JSF ¶¶ 11–12;

Calypso 56.1, Ex. E.[8] These two factors support that Smith was an independent contractor.

### l.   Overall Assessment of the *Reid* Factors

Although the existence and degree of each factor is a question of fact, the legal

conclusion to be drawn from these facts—whether Smith was an independent contractor or

employee—is a question of law. *Meyer v. U.S. Tennis Ass'n*, No. 11 Civ. 06268 (ALC), 2014

WL 4495185, at *5 (S.D.N.Y. Sept. 11, 2014), *aff'd*, 607 F. App'x 121 (2d Cir. 2015). Although

the fact-intensive nature of the 13-factor *Reid* test can sometimes preclude resolution of this

question on summary judgment, summary judgment is appropriate where, as here, the evidence

---

[8] Smith's deficient Rule 56.1 counterstatement does not contend otherwise.

is undisputed and the nature of the employer-worker relationship can be determined as a matter of law. *See Landaeta v. New York & Presbyterian Hosp., Inc.*, No. 12 Civ. 4462 (JMF), 2014 WL 836991, at *4 (S.D.N.Y. Mar. 4, 2014).

Here, the majority (seven to eight) of the *Reid* factors favor a finding that Smith is an independent contractor.[9]  These include the most significant factor of control.  Smith ran his own

---

[9] Even if the Court were to consider Smith's deficient counterstatement, its bottom-line conclusion, that Smith was an independent contractor, would be the same.

On the issue of control, Smith only conclusorily states: "Defendant Giordano would supervise [Smith] by regularly requesting that [Smith] prepare particular dishes, regularly instructing [Smith] as to where, when, and what food to prepare, and creating and changing the menus that [Smith] was instructed to follow in his food preparation." Smith 56.1 ¶ 14. Smith does not cite to any record evidence other than his own interrogatory response reiterating this generalization, which is undermined by the specific evidence adduced by defendants.

On the issue of the source of instrumentalities and tools, Smith asserts he "personally purchased and brought aboard utensils, serving trays, plates, cookware, and food products for the Defendants under the understanding that he would be reimbursed. While [Smith] does not recall each specific item purchased, the total unreimbursed expense to [Smith] was approximately $2,800 in food products and $10,000 in equipment." Even with this claim, the Court would still consider this factor of indeterminate weight, given defendants' response that they do not know "who purchased food and equipment for RSC and SVC." Calypso Reply 56.1 ¶ 12(a). That Smith refused to comply with a demand for his tax returns, which likely would have revealed whether he deducted any business expenses in connection with the catering services he provided to the defendants, also counsels against finding this factor in his favor.

Only on the issue of the location of the work would the Court's scoring of a factor change if Smith's deficient responses were cognizable. Smith asserts that, "[t]he Catering Companies did not have any facilities, kitchens, offices, or other workspace during the relevant time period and had no involvement with Defendants. [Smith] performed his Head Chef job duties for Defendants exclusively on Defendants['] yachts and in Defendants' kitchens onboard their yachts." Although defendants have adduced evidence suggesting the implausibility of this claimed arrangement, that determination would properly be left to a jury. The Court would therefore consider this factor therefore to be of indeterminate weight.

Smith also states that he was "paid by Defendants through checks that were usually directly addressed to Plaintiff personally." Smith 56.1 ¶ 7. But Smith ignores the more than 100 checks in the record addressed to RSC and SVC. In any case, the addressee on the checks would not

catering companies; fashioned the menus from which Calypso's client-passengers chose; and retained control over the manner and the means by which the food was prepared, including by doing most food preparation off-site, not aboard the Calypso yacht. In addition, Smith, as a chef, is a skilled professional, was free to choose the location and timing of the cooking that was the heart of the preparation, and hired his own staff. Smith was paid on a cruise-by-cruise basis, including through LLCs of which he was proprietor. Finally, in contrast to Calypso's regular employees, Smith did not receive any employee benefits and there were no withholdings (*e.g.*, for taxes) from the checks that Calypso sent to him and his LLCs to compensate them for catering work on particular cruises.

To be sure, three *Reid* factors point towards employee status. Smith and Calypso had a long (14-year) business relationship; Calypso offered catering services to its clients; and Calypso operated as a business offering chartered cruises for hire. In context, however, these factors are substantially outweighed by the others. With respect to the parties' long relationship, courts have found this factor not dispositive when the weight of the other factors supports that the worker was an independent contractor. *See Stack*, 2021 WL 1063389, at *7 (citing *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 628 (1st Cir. 1996); *Barnhart v. New York Life Ins. Co.*, 141 F.3d 1310, 1313 (9th Cir. 1998) (finding a 25-year relationship not dispositive when other

---

bear on any *Reid* factor, although it would be relevant to determining, under the NYCHRL, whether Smith was a "natural person" providing services as an independent contractor.

Finally, a recurring blanket denial in Smith's counterstatement is that "[Smith]'s Catering Companies had no involvement with his job as a Head Chef for Defendants. [Smith]'s Catering Companies were never hired to provide catering services to Defendants." *See, e.g., id.* ¶¶ 22, 28, 32. That is demonstrably false. Defendants have adduced significant documentary evidence to show that it worked with RSC and SVC representatives in booking catering services on its cruises, Calypso 56.1, Ex. J, and paid RSC and SVC for services rendered on numerous occasions, *id.*, Ex. M. Accordingly, the Court would be compelled to disregard this assertion.

factors indicated that the worker was an independent contractor)).  Similarly, performing a function that is part of a business's regular offerings does not result in employee status when the balance of factors points the other way.  *Id.*; *Aymes*, 980 F.2d at 863 (noting that "[t]his factor will generally be of little help in this analysis").  The Court is unaware of any case finding employee status where the few factors favoring such an outcome here are offset by the many the Court has found to the contrary.

In sum, with seven to eight factors—including the most weighty, control—supporting a finding that Smith was an independent contractor, three relatively less consequential factors supporting a finding of employee status, and the others in equipoise or indeterminate and hence required to be disregarded, *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000), the Court finds that Smith was not an employee of defendants but instead an affiliate of the companies he owned, which were independent contractors relative to Calypso).  *See, e.g.*, *Legeno v. Douglas Elliman, LLC*, 311 F. App'x 403 (2d Cir. 2009) (finding independent contractor status when balance of factors favored that conclusion); *Cosgriff*, 2012 WL 1071497, at *11 (finding independent contractor status where 7 of the 13 factors weighed in favor); *Stack*, , 2021 WL 1063389, at *8 (S.D.N.Y. Mar. 18, 2021) (finding independent contractor status where 10 of the 13 factors weighed in favor).

The Court accordingly grants defendants' motion for summary judgment on all claims under the ADA and NYSHRL, and all claims under the NYCHRL premised on Smith's alleged status as an employee.

## C.      Was Smith an Independent Contractor Protected Under the NYCHRL?

As noted, Smith also brings claims under the NYCHRL.  Unlike the ADA and the NYSHRL, its protections during the period at issue extended to independent contractors, provided that such were "*natural persons* employed as independent contractors to carry out work

in furtherance of an employer's business enterprise who are not themselves employers." N.Y. Exec. Law § 8-102(5) (emphasis added).

Courts in this District have read this provision to preclude claims brought by workers who were hired by third parties via an entity like an LLC. For example, in *Hopper v. Banana Republic, LLC*, an auditor employed by an LLC was hired by a store to audit its merchandise. No. 07 Civ. 8526 (WHP), 2008 WL 490613, at *1 (S.D.N.Y. Feb. 25, 2008). The district court held that the auditor could not bring claims under the NYCHRL arising from a store employee's alleged sexual harassment because "[the auditor] worked at the Store through her employment at [the] LLC," and was therefore not a "natural person" within the NYCHRL. *Id.* at *3. *See also Williams v. Victoria's Secret*, No. 15 Civ. 4715 (PGG) (JLC), 2017 WL 384787, at *4 n.3 (S.D.N.Y. Jan. 27, 2017), *report and recommendation adopted*, No. 15 Civ. 4715 (PGG) (JLC), 2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) (finding same for corporate employee working for an LLC); *Echevarria v. Insight Med., P.C.*, 72 F. Supp. 3d 442, 460 n.13 (S.D.N.Y. 2014) (finding same for temporary agency employees working as independent contractors for third parties); *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 680 (S.D.N.Y. 2009) (finding dancer was a "natural person" where she worked in an individual capacity).

Defendants have adduced strong admissible evidence that they engaged Smith via his successive LLCs, and not directly as a "natural person." *See* Calypso 56.1, Ex. M (attaching more than 100 checks made out to "RSC" and "SVC"); *id.*, Ex. J at 3 (request to "[p]lease pay Salt and Vinegar Catering for this event and all future events"); *id.*, Ex. Q (September 1, 2015 solicitation email from SVC announcing "[a]lthough we changed the name, our food remains the same"). That other workers for Smith's LLCs performed services for Calypso, without being paid individually, reinforces that Smith's LLCs were responsible for paying personnel of theirs

who helped cater Calypso cruises. The evidence does reflect that occasional checks were made out to Smith individually, but Giordano has attested that these "rare" instances of addressing checks to Smith individually came about when "[Smith] requested the check be written out to him because the catering companies' accounts were overdrawn at the time and payment directed to [Smith] was the only way catering service could be provided." JSF ¶¶ 18, 27; Giordano Aff. ¶ 6. Smith has not adduced any contrary evidence.

Accordingly, the uncontradicted evidence is that Smith worked for Calypso through his employment by the respective LLCs that he operated. The Court accordingly holds that, on the summary judgment record, that Smith's claims fall outside the scope of the NYCHRL.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment. This motion requires dismissal of all of Smith's claims. The Clerk of Court is respectfully directed to terminate the motion pending at docket 48, and to close this case.

The grant of summary judgment is with prejudice to all claims brought by Smith based on the theory that he was an employee. That is because, in ordering targeted discovery, the Court explicitly defined the discovery to be taken as relating to the presence of absence of "an employer-employee relationship between Smith and defendants." Dkt. 34.

The grant of summary judgment is without prejudice, however, to Smith's claims under the NYCHRL, to the extent that these claim that Smith worked for defendants as an independent contractor. Although the evidence adduced in discovery uniformly supports that Smith's work for Calypso came about because his LLCs were hired to work for Calypso and that he thus did not qualify as a "natural person" retained as an independent contractor within the meaning of the NYCHRL, the Court's order authorizing targeted discovery did not expressly identify as a subject of discovery whether, if an independent contractor relationship existed, it was of a nature

25

that fell within the NYCHRL.  Smith therefore was not on unambiguous notice of the need to

adduce discovery on this point during targeted discovery.  It would therefore not be fair to

preclude him from bringing a new action, in a court of competent jurisdiction, pursuing claims

under the NYCHRL based on the theory that he was an independent contractor within the

protection of that statute.

      SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: September 8, 2021
      New York, New York